**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**
_____

KEVIN JAMEL MYERS,

    Plaintiff,

v.                                                Case No. 20-11800

WARDEN KEVIN LINDSEY, et al.,

    Defendants.
_____/

**OPINION AND ORDER OF SUMMARY DISMISSAL**

This is a state prisoner's *pro se* civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff Kevin Jamel Myers is confined at the Macomb Correctional Facility in Lenox Township, Michigan. This case was transferred from the Western District of Michigan where Plaintiff paid the filing fee in full.

Plaintiff alleges that he was terminated from his job with the Michigan Braille Transcribing Fund (MBTF) at G. Robert Cotton Correctional Facility and transferred to Macomb CF after it became known that he had agreed to be a witness in a lawsuit against Defendants in a case associated with the Braille program. Plaintiff names as Defendants both Michigan Department of Corrections and MBTF employees and claims that Defendants' retaliatory actions violated his First Amendment rights. He seeks transfer back to Cotton Correctional Facility, reinstatement of his job, and damages. The complaint will be dismissed for failure to state a claim.

## I. BACKGROUND

Plaintiff worked for the Michigan Braille Transcribing Fund at the G. Robert Cotton Correctional Facility in Jackson, Michigan, as a graphic artist. On May 10, 2019, Plaintiff's cell was searched, and eleven books of pornography were found. (ECF No. 1, PageID.3.) Petitioner received "minor misconduct" contraband tickets for the books and for an extra mattress also found in his cell. (*Id.* at 3, 6.) He was investigated to determine whether he misused his work assignment with MBTF to obtain the books, but the investigation did not reveal any abuse. (*Id.* at 5, 6-7.)

Following the discovery of the pornography and a disciplinary period, Plaintiff was told by Defendant Stacey Purdy to report back to work. When he did so, Defendant Mark Holey called Defendant Cindy Olmstead, who stated that Plaintiff was not working. (*Id.* at 4.) He was instructed to return to his housing unit. The next day, Defendant Brenda Schmeltz[1] sent Plaintiff back to housing when he tried to report again. In an email, Schmeltz wrote that (now retired) Defendant Warden Kevin Lindsey said that Plaintiff would "never be working over here again." (*Id.* at 5.) Schmeltz's email said that Plaintiff had pled guilty to "437" and received five days "LOP" (loss of privileges). In other emails, Schmeltz talked about Plaintiff being found with pornographic materials.

On May 22, 2019, Warden Lindsey told Purdy via email that Plaintiff was terminated from the MBTF, based on the safety and security of the facility, and

---

[1] Defendants Holey, Olmstead, and Schmeltz are employees of the MBTF. Decisions in this district have determined that they are state actors properly sued under 42 U.S.C. § 1983. *See, e.g., Madrid v. King*, No. 17-11266, 2018 WL 1005600, at *5 (E.D. Mich. Jan. 31, 2018), *report and recommendation adopted*, No. 17-11266, 2018 WL 1101330 (E.D. Mich. Mar. 1, 2018).

2

instructed her to initiate the appropriate paperwork. Purdy responded that "nothing [Plaintiff] did, that we can prove, . . . is considered a safety and security problem. He was put back to work for lack of proof" that he made copies or downloaded porn "in braille." (*Id.* at 5.) In an email to Purdy the next day, Lindsey repeated his "safety and security" rationale, and directed Purdy to lift a hold on Plaintiff so that he could be transferred. (*Id.* at 6.) Also on May 23, when asked whether Plaintiff would still be employed in the program, Olmstead stated that Lindsey had told her "No." (*Id.*)

Purdy requested a copy of Plaintiff's ticket "for the 10 porn books" on May 28, 2019. (*Id.*) Purdy filed a work evaluation form on Plaintiff on May 30, 2019, which reflected a termination date of May 23. (*Id.* at 3.)

Plaintiff claims that the day his cell was searched, revealing the pornography, was the same day it became known "that he was asked to be a witness against some of the defendants" named in this complaint in another lawsuit in this district, *Madrid v. King*, 17-11266.[2] (*Id.* at 6.) Plaintiff claims that his job termination and transfer were in retaliation for his agreement to testify against the defendants on Madrid's behalf. (*Id.* at 7.)

## II.   STANDARD

Under the Prison Litigation Reform Act ("PLRA"), the court is required to dismiss a prisoner's complaint before service if it determines that the action is frivolous,

---

[2] The named defendants in *Madrid v. King* are Glenn King, Mark Holey, and Cindy Olmstead; Holey and Olmstead are defendants in this matter. "[I]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record." *United States v. Mont*, 723 F. App'x 325, 327 n.3 (6th Cir.), *cert. granted*, 139 S. Ct. 451 (2018), *and aff'd on other grounds*, 139 S. Ct. 1826 (2019) (citation omitted).

3

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §1915A(b); 42 U.S.C. § 1997e(c). A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is "subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

When evaluating a complaint under PLRA standards, courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A *pro se* civil rights complaint is to be construed liberally. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). "[D]etailed allegations" are not necessary, but under Rule 8(a) the pleading must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 566 U.S. at 677 (citing *Twombly*, 550 U.S. at 555).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was

4

committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The plaintiff must establish the liability of each individual defendant by that person's own conduct. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### III.  DISCUSSION

Plaintiff's complaint does not meet the necessary standard to survive screening. Even construed liberally and in a light most favorable to Plaintiff, his allegations do not establish that defendants retaliated against him for First Amendment protected conduct.

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) . . . the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)).

In the prison setting, the type of conduct that is constitutionally protected is limited: "[I]t is generally much harder for a prisoner to show that his conduct is protected because prison regulations are allowed to infringe on prisoners' rights as long as they are rationally related to a legitimate penological concern." *Thaddeus-X*, 175 F.3d at 395 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). Violating a legitimate prison regulation is not "protected conduct[,]" and thus cannot be the basis for a retaliation claim. *Id.*

Here, the protected conduct alleged was serving as a witness in another federal suit. Plaintiff asserts that the defendants against whom he was going to testify retaliated against him "for what he was doing on behalf of" the plaintiff in the *Madrid* case. (ECF No. 1, PageID.7.) However, a prison inmate "does not have an independent right to help other prisoners with their legal claims." *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (citing *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993)). "Such assistance is protected, however, when the inmate receiving the assistance would otherwise be unable to pursue legal redress." *Herron v. Harrison*, 203 F.3d 410, 415–16 (6th Cir. 2000) (citing *Thaddeus-X*, 175 F.3d at 395; *Gibbs*, 10 F.3d at 378). The protected status in this context derives from the right of access to the courts of the litigant being supported, *id.*, not the inmate providing that assistance, such as the Plaintiff here.

Plaintiff has not asserted that the plaintiff in the *Madrid v. King* case would be unable to proceed with his suit without Plaintiff's testimony, and therefore, his conduct is without First Amendment protection. *Cf. Thaddeus-X*, 175 F.3d at 395 (allegations established that without Thaddeus-X's assistance the plaintiff would lose meaningful access to the courts). Generally, analysis of retaliation claims stops at the point the conduct is deemed not protected *See Thaddeus-X*, 175 F.3d at 395 ("Absent protected conduct, plaintiffs cannot establish a constitutional violation.")

The Sixth Circuit has on occasion permitted plaintiffs who "neglected to allege that [their] services were vital to the other inmates' right of access to the courts" to amend their complaint to include that allegation. *See Herron*, 203 F.3d at 416 (citing

6

*Gibbs*, 10 F.3d 373). However, the court finds that Plaintiff has also failed to meet the third prong, causal connection.[3] Therefore, amendment of his complaint would be futile.

A plaintiff claiming retaliation in violation of the First Amendment must demonstrate that it was a "substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Thaddeus-X*, 175 F.3d at 394, 399. However, if retaliation was not the "but-for cause," and the defendant "even without the impetus to retaliate . . . would have taken the action complained of[,]" a causal connection will not be found. *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (citing *Mt. Healthy*, 429 U.S. at 287); *accord, King v. Zamiara*, 680 F.3d 686, 709 (6th Cir. 2012) (applying *Mt. Healthy*'s standard in the prison retaliation context) (citing *Mt. Healthy*, 429 U.S. at 285; *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002)). Finally, a "defendant must have known about the protected activity in order for it to have motivated the adverse action." *Thaddeus-X*, 175 F.3d at 387 n.3.

First, Plaintiff provides no allegation that plausibly supports any defendant's knowledge of his prospective testimony as a witness in the *Madrid* case. He only asserts that the information became "known" around the time that his cell was searched. Compl., ECF No. 1, PageID.6. "Without more, . . . conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x

---

[3] Plaintiff's allegations would meet the second prong of the *Thaddeus-X analysis*, that is, the loss of his job and subsequent transfer were adverse actions sufficient to "deter a person of ordinary firmness" from engaging in protected conduct. *See Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005) (citation omitted) (transfers); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999); *Spruytte v. Hoffner*, 181 F. Supp. 2d 736, 743 (W.D. Mich. 2001) (job loss).

579, 579–80 (6th Cir. 2004) (citations omitted). Plaintiff has not supplied "more": he has not explained who knew about his role in the *Madrid* case, nor has he linked it to the search of his cell.

Plaintiff does admit to having been disciplined for the pornographic materials found in his cell and does not suggest this was a falsified misconduct. Nor does he allege that any of the named defendants were responsible for the search or subsequent disciplinary action. Plaintiff has not established a nexus between the information about his testimony and his job termination, but rather, his allegations establish that Defendants' emails and other communications demonstrate his misconduct was the motivating factor.

The emails reflect confusion over Plaintiff's status following the ticket. For instance, an email by Schmeltz notes that Plaintiff said had been cleared of his misconduct, but that conflicted with other information she had received. (ECF No. 1, PageID.5.) Schmeltz also wrote that Olmstead was seeking "clarification and agreement" from Warden Lindsey. (*Id.*) The frequent mention of the misconduct in the emails indicate that it was Defendants' primary focus. A prisoner's violation of a "legitimate prison regulation" is not protected and thus cannot serve as the basis for a retaliation claim. *Thaddeus-X*, 175 F.3d at 395.

Plaintiff emphasizes in the complaint that he was found not to have abused his job in obtaining the pornographic materials, and that Classification Director Purdy sent him back to work, but the individuals against whom he was going to testify terminated his job. But the emails in the complaint indicate that the decision-maker in Plaintiff's termination was Lindsey, warden at the time, and not the MBTF staff who were

8

defendants in the *Madrid* suit. (*Id.* at 5, 6.) Responding to a question about whether Plaintiff could continue working in the Braille program, Olmstead wrote in an email that she "talked with Warden Lindsey yesterday and he said 'No.'" (*Id.* at 6.) Schmeltz told a co-worker that she heard Lindsey say Plaintiff would not work there again; she expressed hope that "the warden would come through with what he said." (*Id.* at 4.)

Lindsey emailed Purdy to initiate the termination, citing "safety and security" as the justification. Purdy responded to Lindsey that safety and security were not an issue, based on the investigations of Plaintiff. However, Lindsey overruled Purdy, and Plaintiff's job with MBTF was terminated. He was then transferred to Macomb Correctional Facility.

Lindsey is not a defendant in the *Madrid* case. And as with all other defendants, Plaintiff did not allege that Lindsey was aware Plaintiff was going to testify against MBTF staff. The court cannot fill a factual gap with its own conjecture. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983)). Plaintiff has not plausibly alleged that Defendants retaliated against him based on their knowledge of his prospective assistance in *Madrid*.

## IV.  CONCLUSION

For the reasons set forth above, the court finds that Petitioner has not stated a claim on which relief may be granted. Accordingly,

IT IS ORDERED that the Complaint is summarily DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c).

S/Robert H. Cleland<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated:  October 27, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 27, 2020, by electronic and/or ordinary mail.

<u>S/Lisa Wagner</u>
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\CHD\2254\20-11800.MYERS.OrderSummaryDismissal.ps.chd.docx